IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

MONTE BLUE                                                                                    PLAINTIFF

V.                          Case No. 4:25-CV-00228-KGB-BBM

FRANK BISIGNANO,[1] Commissioner,
Social Security Administration                                                                DEFENDANT

## RECOMMENDED DISPOSITION

This Recommended Disposition ("Recommendation") has been sent to Chief United States District Judge Kristine G. Baker. Either party may file written objections to this Recommendation. Those objections should be specific and should include the factual or legal basis for the objection. To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Chief Judge Baker can adopt this Recommendation without independently reviewing the record. By not objecting, parties also may waive the right to appeal questions of fact.

**I.    INTRODUCTION**

Monte Blue applied for Title II disability benefits on February 14, 2022, alleging disability that began on November 12, 2021, when he was 54 years old. (Tr. at 231).[2] His claim was denied initially and upon reconsideration, and he requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 26). On March 14, 2024, the ALJ concluded

---

[1] On May 7, 2025, Frank Bisignano was sworn in as Commissioner of the Social Security Administration ("the Commissioner"). Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner Bisignano is automatically substituted as the Defendant.

[2] The ALJ's opinion erroneously states that Blue filed his application on February 11, 2022.

that Blue is not disabled. (Tr. at 37). Blue filed for review of the ALJ's decision and submitted additional evidence in support of his claim. (Tr. at 8, 11, 223). On January 29, 2025, the Appeals Council found that the additional evidence submitted did not show a reasonable probability of changing the outcome and denied review. (Tr. at 1–2). Thus, the ALJ's decision stands as the final decision of the Commissioner. *Id.*

Blue now seeks judicial review, and for the reasons stated below, this Court recommends that the Commissioner's decision be reversed and that this case be remanded for further proceedings.

## II.   THE COMMISSIONER'S DECISION

The ALJ found that Blue had not engaged in substantial gainful activity since his alleged onset date of disability—November 12, 2021. (Tr. at 28). At step two of the sequential five-step analysis, the ALJ found that Blue had the following severe impairments: disorders of the spine, other infections and parasitic disorders, chronic liver disease, diabetes mellitus with peripheral neuropathy, and obesity. *Id.*[3] After finding that none of these impairments or combination of impairments met or medically equaled a listed impairment, the ALJ determined that Blue had the residual functional capacity ("RFC") "to perform light work as defined in 20 C.F.R. 404.1567(b) except that he can lift and carry no more than 20 pounds at a time but can otherwise frequently lift and carry up to 10

---

[3] Using a five-step sequence, the ALJ determines: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520, 416.920(a)(4).

pounds. He can perform activities that require a good deal of standing and walking, as much as 6 hours in an 8-hour workday." (Tr. at 31). The ALJ further found that Blue must avoid concentrated (or constant) exposure to respiratory irritants such as dust, fumes, or strong odors; must avoid extreme changes in temperature or humidity; could perform detailed tasks involving three to four variables; could understand, remember, and carry out job instructions; could exercise independent judgment, requiring little to no supervision; could interact with supervisors, coworkers, and the public on a frequent basis; and could adjust to changes in a work setting. *Id*.

Based on the testimony of a vocational expert, the ALJ found that Blue could perform his past relevant work as an officer clerk but not as he had previously performed it; he could do so as generally performed. (Tr. at 35–36). Alternatively, the ALJ found that other jobs existed in significant numbers in the national economy that someone with Blue's same age, education, work experience, and RFC could perform. (Tr. at 36–37). Consequently, the ALJ concluded that Blue is not disabled. (Tr. at 37).

Blue filed an appeal with the Appeals Council and submitted additional evidence for consideration. (Tr. at 8–18, 43–97). In response, the Appeals Council wrote as follows in its "Notice of Appeals Council Action":

> You submitted medical records from: Little Rock Diagnostic Clinic, dated May 28, 2024 to May 29, 2024 (9 pages); GastroArkansas, dated February 14, 2024 to April 2, 2024 (56 pages); and Little Rock Diagnostic Clinic, dated July 17, 2024 (2 pages). We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence.

(Tr. at 2). In cases involving new evidence submitted to the Appeals Council, the Court

does "not evaluate the Appeals Council's decision to deny review, but rather [it] determine[s] whether the record as a whole, including the new evidence, supports the ALJ's decision." *Cunningham v. Apfel*, 222 F.3d 496, 500 (8th Cir. 2000) (citation omitted).

### III.   DISCUSSION

#### A.   Standard of Review

"In reviewing the ALJ's decision," the Court "examine[s] whether it is supported by substantial evidence on the record as a whole and whether the ALJ made any legal errors." *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). "Substantial evidence is that which a 'reasonable mind might accept as adequate to support a conclusion,' whereas substantial evidence on the record as a whole entails 'a more scrutinizing analysis.'" *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted). "Our review 'is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . . [W]e also take into account whatever in the record fairly detracts from that decision.'" *Gann v. Berryhill*, 864 F.3d 947, 950–51 (8th Cir. 2017) (citation omitted). "Reversal is not warranted, however, 'merely because substantial evidence would have supported an opposite decision.'" *Reed*, 399 F.3d at 920 (citation omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . is 'more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It

means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted).

### B. Blue's Arguments on Appeal

Blue argues two points on appeal: (1) that the ALJ erred in determining that Blue could perform the standing and walking requirements for light-duty work; and (2) that the ALJ failed to evaluate properly at Step Two Blue's severe impairment of diabetic retinopathy with retinal hemorrhaging. (Doc. 7 at 1). Considering the record as a whole, including the additional evidence submitted to the Appeals Council, this Court finds that the ALJ erred in determining Blue's RFC and, thus, remand is warranted.

### 1. Blue's Relevant Medical History

On November 13, 2021, Blue sought emergency medical treatment while employed as a truck driver traveling through Florida. (Tr. at 374). He was admitted to a local hospital with a large multiloculated pleural effusion in his left lung. (Tr. at 375). Admission records show that Blue also had non-alcoholic fatty liver disease, cirrhosis with abdominal ascites, thrombocytopenia, esophageal varices, portal hypertension, and Type 2 diabetes with hyperglycemia. (Tr. at 376).

Blue was transferred to another hospital on November 17, 2021, presenting with empyema and requesting a "higher level of care." (Tr. at 428). His diabetes was described as "wildly uncontrolled," and he had bilateral lower extremity edema. (Tr. at 440). His pleural effusion was drained, and it was determined that he could be discharged on antibiotics to return to Arkansas for follow-up care. *Id*. Notes indicate that Blue should "be evaluated by a hepatologist for his cirrhosis" and "evaluated for and scored for transplant

list." *Id*. Blue needed significant improvement in his diabetes control, which staff believed immunocompromised him. *Id*.

Blue followed up with his primary-care physician, Dr. Patricia McGarry, at Salem Family Practice in Benton, Arkansas, on November 22, 2021. (Tr. at 776). Records indicate that he had "pneumonia with pleural effusion," and he was sent to the emergency room due to "dyspnea and effusion." (Tr. at 777). He presented to the UAMS Medical Center emergency room on November 24, 2021, for further management of his pleural effusion. (Tr. at 612). He was treated and later released on December 3, 2021. (Tr. at 611).

On December 6, 2021, Blue had a follow up appointment at Salem Family Practice; clinic notes indicate that his "specialist has recommended that he [file] for [disability] as he is not [able] to drive truck for long distances due to his chronic [bilateral lower extremity] edema, [h]is IDDM, and end stage liver disease." (Tr. at 778). Blue's pedal edema and blood sugars had "improved greatly." *Id*. He stated that he was "[o]verall . . . feeling good." *Id*. On January 11, 2022, Blue followed up with Dr. Katy Marino at the Rockefeller Cancer Institute regarding his pleural effusion, stating that he was "feeling much better" with no fever, chills, night sweats, or productive cough. (Tr. at 518).

On February 16, 2022, Blue returned to Salem Family Practice, complaining of pain in his feet and worsening neuropathy since his release from the hospital. (Tr. at 781). He had stinging and burning in both feet after walking. *Id*. On April 12, 2022, Blue saw Dr. Cole Wood, an infectious-disease specialist. (Tr. at 792). Blue reported that he still got

short of breath with exertion but was able to mow his lawn and go fishing. *Id*.[4] He stated that he could not stand for the same amount of time as he could prior to his infection but that he was making progress. *Id*. He was on metformin and insulin. *Id*.

On May 2, 2022, Blue followed up with his primary-care doctor, stating that his "neuropathy has worsened." (Tr. at 810). He brought his glucometer to the appointment, and his last A1C from April 1, 2022, was 10.2. *Id*. The doctor increased his gabapentin from 300 mg to 600 mg. (Tr. at 811). On September 13, 2022, Blue again visited Salem Family Practice, complaining primarily of low back pain, which he said was "getting worse." (Tr. at 831). He stated that he woke up a few days earlier with pain in his back that increased throughout the day. *Id*. He had numbness in his left buttock and down his thigh. *Id*. He was taking ibuprofen without relief. *Id*. Notes indicate that two years earlier, Blue had back pain with an MRI showing an annular fissure of L5-S1. *Id*.[5] Examination revealed tenderness to palpitation over the L5-S1 region and over the left lumbar paraspinal muscles. *Id*. Blue was given a corticosteroid injection and instructed to take his gabapentin twice a day. (Tr. at 832).

Blue again sought care with Dr. McGarry on November 3, 2022, to discuss his back pain and request a referral to a pain specialist. (Tr. at 833). He described the pain in his left

---

[4] At the hearing before the ALJ in December 2023, Blue testified that his father was in hospice and wanted to go fishing, which they did before his father passed. (Tr. at 116). Blue testified that his sister provided lawn chairs for him and his father to use while fishing. *Id*. Blue stated that he could not fish in a boat because of his balance issues. *Id*. In a pain questionnaire dated May 9, 2022, Blue stated that he could no longer mow his lawn with a push mower. (Tr. at 272).

[5] The record includes an MRI conducted on August 23, 2020, with the following findings: focal spondylosis at L4-L5 with a posterior annular fissure "which is a likely source of back pain," no significant central canal or neural foraminal narrowing, and no nerve impingement. (Tr. at 857).

7

glute as 10/10, radiating down his left leg. *Id*. He complained of increased numbness and tingling in his feet and stated that he was unable to stand after 15 minutes without severe pain. *Id*. Dr. McGarry observed pain with palpitation in Blue's feet. (Tr. at 834). On November 10, 2022, Dr. McGarry examined Blue following a complaint of abdominal pain. After removing Blue's footwear, Dr. McGarry observed a laceration to Blue's left toe; the doctor also found 5/5 strength in Blue's extremities, "numbness and tingling BLE," and "sharp pain in his left buttock/lumbar through posterior leg." (Tr. at 835–36).

On November 28, 2022, Blue had an appointment with Pain Treatment Centers of America. (Tr. at 849). He complained of uncontrolled lower back pain that was constant with intermittent flare ups. (Tr. at 851). At its worst, the pain was 10/10, but it averaged 5/10. *Id*. He stated that the pain was worse with physical activity. *Id*. On examination, Blue had an antalgic gait; pain in the lumbar spine that was reproduced with deep palpitation; pain with anterior flexion, hyperextension, bilateral lateral flexion, and bilateral lateral rotation; a positive straight leg raise on the left; decreased sensation in his lateral left thigh; and 4/5 strength throughout lower extremities. (Tr. at 852). Assessments included lumbosacral spondylosis with radiculopathy and diabetic neuropathy. (Tr. at 853).

On November 29, 2022, Blue had a follow-up appointment at GastroArkansas. (Tr. at 877). During that appointment, Blue mentioned that he had seen a pain-management doctor for chronic back pain and that he would be doing injections. (Tr. at 878). Examination notes indicate that Blue ambulated without assistance. (Tr. at 880).

Blue's medical records include multiple pain treatment follow-ups over the next year, during which Blue complained of low back pain, neuropathy pain, and leg pain. (Tr.

at 1105, 1089, 1084, 1048, 1035, 1022). As of September 14, 2023, Blue described his pain as "constant with intermittent flare ups." (Tr. at 1022). "At its worse pain is 9/10, at its least it is 3/10, on an average about 5/10, and currently it is 7/10." *Id*. Although notes indicate that Blue's pain was being managed with his current prescription regimen, he consistently reported that his "pain intensity increases with increase[d] physical activities even with pain medications." (Tr. at 1024, 1038, 1050, 1086, 1091).

Blue again saw Dr. McGarry on June 13, 2023, complaining of numbness in his left leg, pain in his low back, and continued weakness in his left lower extremities. (Tr. at 999). Blue told the doctor that he could not lift his left foot up all the way, that the muscles in his thigh were weak, and that he felt extremely fatigued the past several weeks. *Id*. During examination, Dr. McGarry confirmed that Blue had 4/5 strength in his left thigh and decreased dorsiflexion of his left foot. *Id*.

On September 11, 2023, Blue saw Stephanie Farmer, APRN, at Bryant Medical Clinic for a diabetes follow-up. (Tr. at 1008). Blue reported left lower back pain, numbness in his feet that was worse on the left, slight weakness in his left foot, and fatigue. (Tr. at 1011). During examination, Farmer noted that Blue had trace edema in his ankles, a wide-based gait, and an abnormal foot exam with mild sensory changes bilaterally with flat feet worse on the left. *Id*. Blue was slow to stand from a chair but able to get onto the examination table without help. *Id*. The record also includes chiropractic visits from September 27 through November 6, 2023, during which Blue sought treatment for pain in his low back and lower extremities. (Tr. at 1109).

After the ALJ issued his decision denying disability on March 14, 2024, Blue

9

submitted the following additional medical evidence to the Appeals Council for consideration. (Tr. at 6). In a visit to the Little Rock Diagnostic Clinic ("LRDC") on May 28, 2024, Blue described his extremity pain as moderate, constant, and stable. (Tr. at 11). He indicated that he had numbness, tingling in his arms and legs, and "mild balance issues." *Id*. He reported that he had been on gabapentin 800 mg three times daily "without much relief" and, six months prior, had started Lyrica with "modest symptom relief." *Id*. The doctor noted that Blue "was not experiencing enough radiating pain to justify lumbar imaging" but did feel that NCS/EMG testing on lower extremities was warranted. *Id*. A nerve-conduction study was done at LRDC on July 17, 2024, finding "abnormal NCS in BLE and LUE as well as EMG in BLE consistent with severe sensorimotor polyneuropathy . . . clinical correlation is required and we will watch clinically for now emphasizing aggressive mgmt. of his diabetes as well as hematology referral re his anemic and question of gammopathy." (Tr. at 9).

### 2. RFC

Blue argues that the ALJ erred in finding that he could meet the requirements of light-duty work with no postural limitations. The ALJ found several severe impairments—diabetes with peripheral neuropathy, spinal disorders, and obesity—that Blue asserts compromised his ability to walk and stand for long lengths of time. And Blue argues that the ALJ failed to consider how those impairments, individually and combined, affected his ability to meet the requirements of light-duty work. Blue further asserts that he provided objective medical evidence to support his allegations of disabling pain, including an MRI done in 2020 and a nerve-conduction study done a few months after the ALJ's decision.

A claimant bears the burden of establishing his RFC, *Despain v. Berryhill*, 926 F.3d 1024, 1027 (8th Cir. 2019), which is "the most [he] can still do despite [his] limitations," 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). An ALJ must review all the relevant medical and other evidence when determining a claimant's RFC. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Further, an ALJ is not required to include limitations that are not supported by the evidence in the record. *McGeorge v. Barnhart*, 321 F.3d 766, 769 (8th Cir. 2003). Where substantial evidence in the record supports the decision, this Court will not reverse simply because it could have decided the case differently. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011) ("We will not disturb the denial of benefits so long as the ALJ's decision falls within the available zone of choice." (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008))).

In cases involving the submission of supplemental evidence to the Appeals Council, the record includes the evidence submitted after the hearing. *See Jenkins v. Apfel*, 196 F.3d 922, 924 (8th Cir. 1999) ("In addition to evidence before the ALJ, the record includes evidence that was submitted after the hearing and considered by the Appeals Council in denying review." (citing *Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994))). "When the Appeals Council has considered new and material evidence and declined review, [the Court] must decide whether the ALJ's decision is supported by substantial evidence in the whole record, including the new evidence." *Kitts v. Apfel*, 204 F.3d 785, 786 (8th Cir. 2000) (citing *Mackey v. Shalala*, 47 F.3d 951, 953 (8th Cir. 1995)). Evaluating the new evidence requires the Court to determine "how the ALJ would have weighed the newly submitted evidence if it had been presented at the original hearing." *Jenkins*, 196 F.3d at 924 (citing

*Riley*, 18 F.3d at 622). Here, the Appeals Council considered Blue's supplemental evidence and declined review, so the supplemental evidence is part of the record.

As support for his finding that Blue could meet the standing and walking requirements of light-duty work, at least six hours in an eight-hour workday, the ALJ cited Blue's improved symptoms following his November 2021 hospitalization (specifically, improved cough, no sputum, dramatically improved edema, improved appetite, and improved strength); his feeling well enough to go fishing and mow his lawn; normal physical examinations; and a lack of objective medical evidence. (Tr. at 31–35). The ALJ acknowledged that, after his 2021 hospitalization, Blue mentioned worsening back pain and neuropathy in his feet in November 2022, August 2023, and September 2023. (Tr. at 33–34). The ALJ also noted that Blue described pain in his feet and lower extremities, which was more severe with walking and standing; back pain; neuropathy in his extremities that was worsening; edema in his lower extremities that required elevation; an inability to stand for very long; and a limited ability to lift, squat, bend, stand, walk, and kneel. (Tr. at 32). The ALJ cited the examination revealing trace ankle edema, a wide-based gait, and mild sensory changes in Blue's feet. (Tr. at 34). Moreover, the ALJ noted that Blue had a body mass index greater than 30, which can have an adverse impact on co-existing impairments, and the ALJ took Blue's obesity "into account in reaching the conclusions." *Id*.

As for medical opinions, the ALJ found the consultant assessments done at the initial determination and on reconsideration to be persuasive. (Tr. at 34). Dr. William Harrison evaluated Blue's medical records on June 16, 2022, and did not list neuropathy

12

or back pain as an impairment. (Tr. at 131–35). At reconsideration, Dr. Robert Redd reviewed Blue's medical records as of March 22, 2023, and did include diabetic neuropathy and low back pain as impairments. (Tr. at 137–45). However, Dr. Redd determined that Blue could perform light work with no restrictions. (Tr. at 142). Notably, Dr. Redd did not review the records from Blue's appointments with Dr. McGarry (June 2023) and Nurse Practitioner Farmer (September 2023), and he did not review the results of Blue's July 2024 nerve-conduction study.

The ALJ ultimately decided that, "while examinations do support a degree of compromised functioning, they do not support that the claimant is totally and permanently disabled from all work in the national economy." (Tr. at 35). The ALJ found Blue's allegations of disabling pain "inconsistent because the record supports that the claimant retains significant residual functioning despite his conditions." (Tr. at 32). In particular, the ALJ noted that the "evidence reflects that the claimant's hospitalization was secondary to poor diabetic management, and that his symptoms have been largely stabilized with proper medication management. The claimant has alleged significant symptoms secondary to back pain and neuropathy, *but neither of these conditions have been confirmed by objective workup*." (Tr. at 35) (emphasis added).

In rejecting Blue's allegations of pain, numbness, and tingling in his lower extremities, the ALJ explicitly cited a lack of objective medical evidence. Importantly, an ALJ must not "disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." SSR

13

16-3p, 81 Fed. Reg. 14166, at 14169, 2016 WL 1020935 (Mar. 16, 2016); *see also Grindley v. Kijakazi*, 9 F.4th 622, 630 (8th Cir. 2021) ("Another factor to be considered is the absence of objective medical evidence to support the complaints, although the ALJ may not discount a claimant's subjective complaints solely because they are unsupported by objective medical evidence." (quoting *Halverson v. Astrue*, 600 F.3d 922, 931–32 (8th Cir. 2010))). Nevertheless, the record contains objective medical evidence of Blue's low back pain and diabetic neuropathy in contradiction to the ALJ's finding.

In records from an August 2020 MRI done on Blue's lumbar spine, Dr. William Taylor Henry Jr. noted "[f]ocal spondylosis at L4-5 with a posterior annular fissure *which is a likely source of back pain*." (Tr. at 857) (emphasis added). In reviewing this evidence, the ALJ noted that, in September 2022, Blue claimed a two-year history of back pain and "self-alleged that he had imaging which showed an annular fissure at the L5-S1 level." (Tr. at 33). The ALJ recited the findings from the 2020 MRI, stating that it "showed 'mild' facet degenerative change and minimal posterior disc bulging with a central posterior annular fissure, but with normal central canal lower limits." *Id*. The ALJ also stated that "this was at the L4-L5 level; [t]he claimant had a normal examination of the L5-S1 level." *Id*. The ALJ did not mention Dr. Henry's interpretation that the annular fissure was a likely source of Blue's pain. Nor did the ALJ explain why this evidence does not support Blue's allegation of back pain.

As for Blue's claims of worsening neuropathy, nerve-conduction testing done in July 2024 showed findings consistent with "severe sensorimotor polyneuropathy." (Tr. at 8). Although that testing required clinical correlation for confirmation, it is objective

14

evidence consistent with Blue's continued complaints of worsening neuropathy in his lower extremities. Examinations that Blue had in 2022 and 2023 provide additional objective support that he was suffering from pain and neuropathy in his lower extremities, including pain in his feet and low back with palpitation; an antalgic gait; pain with anterior flexion, hyperextension, bilateral lateral flexion, and bilateral lateral rotation; a positive straight-leg raise; decreased sensation in his left thigh; 4/5 strength in his extremities; decreased range of motion in his left foot; a wide-based gait; and mild sensory changes bilaterally that was worse in his left. (Tr. at 834, 852, 999, 1011). Although the ALJ expressly found that Blue's subjective complaints of pain were unsupported because there was a lack of "objective workup," that simply is not reflected in this record.

Additionally, the ALJ found spinal disorders, diabetic neuropathy, and obesity as severe impairments at Step Two but found that Blue could perform the full range of light work without any postural limitations.[6] This Court has held that a "finding that an impairment is severe cannot square with a conclusion that it imposes no limitations. It is axiomatic that a severe impairment imposes limitations, and an impairment that imposes no limitations is not severe." *Pickens v. Berryhill*, No. 4:18-CV-212-JLH-BD, 2019 WL 1219707, at *2 (E.D. Ark. Mar. 15, 2019), *report and recommendation adopted*, 2019 WL 1449618 (E.D. Ark. Apr. 1, 2019); *see also Grier v. Kijakazi*, No. 4:22-CV-00011-KGB-JTR, 2023 WL 1965908, at *3 (E.D. Ark. Feb. 13, 2023) ("Despite finding Grier's

---

[6] Light work "requires a good deal of walking or standing[.]" 20 C.F.R. § 404.1567(b). A "full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *5–6. The standing and walking requirements are the same for light and medium work. *Id*. at *6.

migraines were a 'severe' impairment, the ALJ failed to provide any migraine related limitation in any basic work activities."), *report and recommendation adopted*, 2023 WL 2376114 (E.D. Ark. March 6, 2023).

The undersigned notes that this Court has reversed an ALJ under similar circumstances. *See Franklin v. Comm'r of Soc. Sec. Admin.*, No. 4:20-CV-01037-BSM-ERE, 2021 WL 4950299, at *2 (E.D. Ark. Oct. 25, 2021), *report and recommendation adopted*, 2022 WL 823579 (E.D. Ark. Mar. 17, 2022). In *Franklin*, the ALJ found diabetes mellitus with peripheral neuropathy as a severe impairment but also found that the claimant could perform a full range of medium work. *Id*. The Court noted that "the ALJ held that [Franklin] had no limitations on her ability to stand or walk." *Id*. "The ALJ cannot plausibly find at Step Two that Ms. Franklin's impairment significantly limits her ability to perform basic work activities and also disregard the impairment in determining her RFC." *Id*. As in *Franklin*, the ALJ's finding in this case that Blue's diabetic neuropathy, obesity, and spinal disorders are severe impairments—meaning that those impairments significantly limited Blue's ability to perform basic work activities—does not square with his subsequent determination that those impairments did not limit Blue's functional abilities in any way. The ALJ's decision does not provide sufficient explanation for this inconsistency.

A claimant's RFC must account fully for all his impairments. *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008). Because this Court is not convinced that the RFC in this case did so, it recommends remand.

## IV. CONCLUSION

For the reasons stated above, the Court recommends that the Commissioner's decision be reversed and that this case be remanded for further proceedings.

DATED this 6th day of January, 2026.

_____
UNITED STATES MAGISTRATE JUDGE

17